[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 06-12428
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 8, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 05-01018-CV-T-30MAP

ERNEST B. HAIRE,
a.k.a Ernest Haire, III,

Plaintiff-Appellant,

versus

KELLY J. THOMAS,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(November 8, 2006)**

Before TJOFLAT, BIRCH and CARNES, Circuit Judges.

PER CURIAM:

The plaintiff, Ernest B. Haire, appeals the district court's dismissal with

prejudice of his complaint, alleging that the defendant, FBI Special Agent Kelly Thomas, intentionally fabricated facts in an affidavit to obtain a search warrant in violation of Haire's Fourth Amendment rights. Haire asserts that the magistrate judge would not have found probable cause to issue the warrant absent those fabricated statements. He also seeks a permanent injunction to enjoin Thomas, his agents, employees, attorneys, or any person in active concert or participation from threatening or intimidating any witness in this case.[1] The district court dismissed the Fourth Amendment claim under Rule 12(b)(6) for failure to state a claim and dismissed under Rule 12(b)(1) for lack of jurisdiction the request for an injunction. We affirm as to the first claim, which moots the request for an injunction.

## I.

We review de novo the district court's grant of a 12(b)(6) motion to dismiss, accepting the factual allegations of the complaint as true and construing them in the light most favorable to the plaintiff. Chepstow Ltd v. Hunt, 381 F.3d 1077, 1080 (11th Cir. 2004). If it is clear that the plaintiff can prove no set of facts to support the claims of the complaint, dismissal is appropriate. Id.

---

[1] We note that while Haire's complaint also sought to enjoin Thomas from taking any action against Haire, his family, or his business enterprises that could be considered retaliation for filing this action, only the denial of the request for an injunction preventing Thomas from threatening or intimidating any witness in this case is raised on appeal.

Haire contends that the district court erred in dismissing his complaint because it challenged "a vast majority" of the evidence contained in Thomas' affidavit, without which the magistrate judge could not have found probable cause for the search warrant. He argues that his complaint demonstrated that the undisputed portions of the affidavit were insufficient to establish probable cause. Therefore, Haire asserts, his complaint properly raised a Fourth Amendment claim of unlawful search and should not have been dismissed.

As an FBI agent, Thomas may be entitled to qualified immunity, which "embodies an 'objective reasonableness' standard, giving a government agent the benefit of the doubt unless her actions were so obviously illegal in the light of then-existing law that only an official who was incompetent or who knowingly was violating the law would have committed them." Id. "That qualified immunity protects government actors is the usual rule; only in exceptional cases will government actors have no shield against the claims made against them in their individual capacities." Williams v. Consolidated City of Jacksonville, 381 F.3d 1298, 1299 (11th Cir. 2004) (citation omitted).

To determine if Thomas is entitled to qualified immunity, we engage in the two-part analysis established by Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001). First, we determine if, taking the facts in the light most

3

favorable to Haire, Thomas violated his constitutional rights.  Id.  Second, if a constitutional violation exists on the face of the facts, we determine "whether the right was clearly established," such that "a reasonable official would understand that what he [was] doing violate[d] the rule."  Id. at 201–02, 121 S. Ct. at 2156.  Because we are dealing with a motion to dismiss here, "the qualified immunity inquiry and the Rule 12(b)(6) standard become intertwined."  GJR Invs. Inc. v. County of Escambia, 132 F.3d 1359, 1336 (11th Cir. 1998).  "If a plaintiff has not sufficiently alleged a violation of any constitutional right, it is axiomatic that the plaintiff likewise has failed to allege the violation of a 'clearly established' right" and the complaint should be dismissed.  Id. at 1337; Gonzalez v. Reno, 325 F.3d 1228, 1233 (11th Cir. 2003) ("It is therefore appropriate for a district court to grant the defense of qualified immunity at the motion to dismiss stage if the complaint fails to allege the violation of a clearly established constitutional right." (internal citation omitted)).

For Haire to establish a constitutional violation here, he must make a "substantial preliminary showing" that Thomas intentionally or recklessly made a false statement in the affidavit and the allegedly false statement must have been necessary to a finding of probable cause.  Franks v. Delaware, 438 U.S. 154, 155, 98 S. Ct. 2674, 2676 (1978).  Thus, for there to even be a constitutional violation,

4

we must find that the magistrate judge did not have probable cause to issue the search warrant absent the portions of the affidavit contested by Haire. Dahl v. Holley, 312 F.3d 1228, 1235 (11th Cir. 2002) ("[T]he warrant is valid if, absent the misstatements or omissions, there remains sufficient content to support a finding of probable cause."). "Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location." United States v. Brundidge, 170 F.3d 1350, 1352 (11th Cir. 1999).

The affidavit here consists of eleven pages and thirty-one paragraphs. Haire only challenged portions of eight paragraphs, and if that text is removed, probable cause still exists. To issue the warrant the magistrate judge had to determined only that there was a "fair probability" that Haire has evidence in his home relating to the underlying fraud. The evidence did not necessarily have to implicate Haire in the crime. Zurcher v. Stanford Daily, 436 U.S. 547, 556, 98 S. Ct. 1970, 1976–77 (1978) ("The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought.").

The search warrant was issued to further an investigation into the possible

bankruptcy fraud and securities fraud of Paul Bilzerian. Bilzerian was convicted of securities fraud and conspiracy in 1989. The SEC brought a civil action, and in 1993, the district court in Washington ordered disgorgement of over $62 million in fraudulent profits and pre-judgment interest. When Bilzerian failed to pay, he was held in contempt for purposefully insulating his assets from the court. The court also determined that Bilzerian had transferred his assets into off-shore trusts and family-owned companies and partnerships. After a second bankruptcy filing and the court's finding that Bilzerian had failed to meet the purgation requirements, the court determined that Bilzerian had an interest in Cimetrix securities both held in trust and held by Haire. Because both the court's decision and Thomas' investigation linked Haire to Bilzerian's possible securities and bankruptcy fraud, a search warrant was issued to search Haire's residence for evidence of those crimes.

In upholding the search, the district court's opinion lays out seven pages of undisputed statements from the affidavit that establish probable cause. Haire does not challenge the information provided by the D.C. District Court's opinion, the evidence offered by the SEC, the trash recovered from Bilzerian's residence, or some of the statements of the cooperating witness. First, Haire does not question the district court's January 2001 opinion (attached to the affidavit as Attachment

6

D) which determined that (1) Haire served as trustee for Bilzerian's Children's Trust; (2) Bilzerian has an interest in stock that Haire holds; and (3) "unless restrained and enjoined by order of this Court . . . Ernest Haire will dissipate, conceal, or transfer from the jurisdiction . . . assets which are properly part of the Receivership Estate in this action." Further, the court ordered Haire to hold and to prevent the transfer of all Cimetrix stock currently held by him and any payments the stock might generate. Second, Haire failed to contest paragraph 24 of the affidavit where the SEC provided documents showing the transfer of over 1,000,000 shares of Cimetrix stock to Haire. Third, as detailed in uncontested paragraphs 25 through 28, Thomas recovered documents from Bilzerian's trash concerning Haire hiring attorneys for Bilzerian and linking Haire to overseas trusts and asset transfers, including a transfer of $1,000,000 to Haire. Fourth, Haire does not contest the portion of paragraph 15 where the cooperating witness disclosed that Haire told him that the court froze one of his accounts that contained Cimetrix stock because Bilzerian loaned him the $1,000,000 without the court's knowledge, and that he had put some documents in his residence safe. Nor does Haire challenge the cooperating witness's statements in paragraphs 10 and 14 that when visiting Haire's residence several days before the affidavit was issued, he saw documents (bank statements, SEC documents, Cimetrix stock papers) relating the

7

SEC lawsuit against Bilzerian.

We conclude that even after the contested portions of the affidavit are removed, the remaining evidence, only some of which we have detailed above, provides a substantial basis to support a finding of probable cause. Thus, there was no constitutional violation. Thomas is entitled to qualified immunity, and the district court properly dismissed Haire's Fourth Amendment claim under Rule 12(b)(6).

## II.

As for Haire's request for a permanent injunction against Thomas and his agents to prevent them from threatening or intimidating any witness in the case, the district court determined that Haire lacked standing and dismissed that part of the complaint under Rule 12(b)(1). Because of our conclusion that the district court properly dismissed Haire's Fourth Amendment claim, there is no lawsuit left and no testifying witnesses to intimidate. Alternatively, if any witnesses are intimidated, it would not affect Haire because his lawsuit has been dismissed, and that means he no longer has standing to complain about the intimidation of those people.

**AFFIRMED.**